IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:10-CR-8-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| GARY JACKSON, | ) | |
| WILLIAM WHEELER MATHEWS, JR., | ) | ORDER |
| ANDREW HOWELL, | ) | |
| RONALD SLEZAK, and | ) | |
| ANA BUNDY, | ) | |
| | ) | |
| Defendants. | ) | |

Five motions to dismiss, fully briefed, and on which, with one exception, oral argument was received December 12, 2012, come now before the court.[1] These include motion directed to count one of the indictment, alleging a conspiracy in violation of 18 U.S.C. § 371 (DE #238), joined in by all five defendants, including Gary Jackson ("Jackson"), William Wheeler Mathews, Jr. ("Mathews"), Andrew Howell ("Howell"), Ronald Slezak ("Slezak"), and Ana Bundy ("Bundy"). Motion to dismiss counts two through six of the indictment, alleging repeated violations of 18 U.S.C. §§ 924 (a)(1)(A) and 2 (DE # 246), filed by defendants Jackson and Slezak (DE #246), comes now before the court. Also addressed below is motion to dismiss counts eight and nine, alleging violations of 18 U.S.C. §§ 922(o)(1) and 2, and counts eleven, and twelve of the indictment, alleging

---

[1] Discovery disputes were addressed in hearing December 13, 2012. A number of orders on discovery have issued since that date, and further order or orders shall follow on discovery issues remaining.

violations of 26 U.S.C. § 5861(d) and 18 U.S.C. § 2 (DE # 244), filed by defendants Jackson and

Mathews. Defendant Howell's motion to dismiss count fourteen, alleging violation of 18 U.S.C. §§

1512(b)(2)(B) and 2, and count fifteen, alleging violation of 18 U.S.C. §§ 1519 and 2 (DE # 242),

comes now before the court, together with defendant Bundy's companion motion to dismiss to count

14 (DE # 248). All of the issues raised of or relating to these motions to dismiss are ripe for

decision.[2]

## BACKGROUND

Indictment filed April 16, 2010, charges that from about January 2003, and continuing

thereafter until about November 2009, defendants conspired to commit offenses against the United

States, including making false statements in records of a federally licensed firearms dealer,

possessing machine guns and unregistered firearms, and obstructing justice. In addition to

conspiracy, the indictment charges defendants in individual counts, in various combinations, with

committing violations of federal law that constitute alleged overt acts of the conspiracy.

According to the indictment, defendants are former employees of Blackwater Worldwide,

Inc. ("Blackwater"), primarily a defense contractor headquartered in Moyock, North Carolina, with

property in the vicinity covering approximately 7,000 acres, including offices, an armory,

classrooms, and training grounds.[3] Blackwater contracted with various agencies to provide training

---

[2] The court has determined that oral argument regarding motion to dismiss counts eight, nine, eleven, and twelve (DE # 244) is not necessary to the decisional process.

[3] At the time of filing of the indictment, Blackwater had been renamed Xe Services. Xe Services has since been renamed Academi, LLC. On June 21, 2012, the government filed a seventeen count criminal information against Academi, LLC, charging it with various violations of export control laws and firearms laws committed by its predecessor affiliates, along with a proposed deferred prosecution agreement, which the court accepted on August 10, 2012, in which Academi acknowledged responsibility for conduct set forth in the agreement, and consented to the payment of a $7.5 million fine, among other conditions, in exchange for the government's agreement to defer prosecution of the criminal information. See United States v. Academi, LLC, No. 2:12-CR-00014-FL (E.D.N.C.), DE ## 1, 15, 17.

with both military and law enforcement applications, and to provide security services in Iraq, Afghanistan, and other locations worldwide. Throughout the charged time frame, Blackwater was a federally licensed firearms dealer, subject to records and registration requirements under federal firearms laws. As such, it was "required by law to maintain truthful, accurate and detailed records relevant to the acquisition and disposition of all firearms which come within [its] control." (Indictment at 2-3).

Jackson held the title of President of Blackwater, and was employed by the company between 1999 and February, 2009.[4] Mathews held the title of Executive Vice President, and was employed by the company between April, 2004 and November, 2008. During the charged time period, Slezak was an employee responsible for all documentation and matters related to Blackwater's status as a federally licensed firearms dealer. Howell held the title of General Counsel at Blackwater, and was employed by the company between December 2005 and April 2009. Bundy held several administrative positions related to Blackwater's Moyock operations, and was employed by the company between 2002 and March, 2009. Other Blackwater employees identified in the indictment include Witness #2, now identified by the government as Gary Flannelly, who executed several federal firearms registration forms that are subject of counts two through six of the indictment.[5]

---

[4] Although the dates of employment are not specified in the indictment, the court requested at hearing that defendants submit a chart summarizing aspects of the conspiracy relating to their motion to dismiss count one. The court provided the government the opportunity to comment upon same and/or submit its proposed summary chart by the same deadline. Defendants filed a notice of supplemental information, attaching the chart, as requested, on December 21, 2012, which includes the dates of employment noted in the text above. Defendants provided the chart to the government in advance of its filing for review. The government requested a change unrelated to the dates of employment.

[5] Flannelly pleaded guilty on September 12, 2011, to a criminal information charging him with making false statements in federal firearms forms. See United States v. Gary Flannelly, No. 2:11-CR-24-FL (E.D.N.C.).

3

According to the indictment, the object of the charged conspiracy was to gain an advantage over competitors in the defense contracting field and thereby profit from obtaining and maintaining government contracts. Access to automatic weapons and short barrel rifles was believed to increase Blackwater's ability to successfully bid and perform on training and protective service contracts. Defendants allegedly carried out the conspiracy by "devising and executing a means of circumventing the law as it relates to the possession and disposition of firearms." (Indictment at 7). The conduct constituting the alleged manner and means of the conspiracy is grouped in the indictment into several categories, with corresponding overt acts and substantive charges, as summarized below.

## A. Camden County Machine Guns

According to the indictment, one means of the conspiracy involved "straw purchases" of machine guns through the Camden County Sheriff's Department ("CCSD"). Jackson and Mathews allegedly enticed CCSD to pose as the straw purchaser of 17 Bushmaster M4 machine guns and 17 Romanian manufactured AK47 machine guns. In 2005, Witness # 1, now identified as Jonathan Worthington, a former deputy with the CCSD,[6] provided letterhead to Blackwater, which then used the stationary to order the weapons from the manufacturer. Blackwater paid for the weapons, and, when they arrived at the CCSD, Blackwater took possession of them and locked them in its armory for use by Blackwater in its training contracts.

The indictment alleges the same conduct as overt acts in furtherance of the conspiracy. Similarly, in counts eight, nine, eleven, and twelve, the indictment charges Jackson and Mathews

---

[6] Worthington pleaded guilty to making false statements as to the ownership of these weapons and aiding and abetting others in violation of 18 U.S.C. §§ 924(a)(1)(A) and 2. See United States v. Worthington, No. 2:11-cr-23-FL-1.

4

with illegally receiving and possessing these unregistered 34 machine guns, or aiding and abetting others in doing so, from about June 2005 to June 2008, in violation of 18 U.S.C. § 922(o)(1), 18 U.S.C. § 2, and 26 U.S.C. § 5861(d). In counts seven and ten, the indictment charges Jackson with illegally receiving and possessing two Steyr machine guns, and aiding and abetting others in doing so, from about January 2003 to July, 2008, in violation of the same statutes.[7]

## B. King of Jordan Firearms

Another alleged means of the conspiracy consisted of Blackwater's alleged efforts to gain favor with the government of the Kingdom of Jordan. As alleged in the indictment, when the King of Jordan came to examine Blackwater's training facility, defendant Jackson and unspecified others "arranged to present the King and/or his entourage with several firearms as gifts." (Id. at 8; 13). According to the government, as a federally licensed firearms dealer, Blackwater was required to record the transfer of the firearms on an Alcohol, Tobacco, and Firearms (ATF) Form 4473. (Opp. at 2). But, instead of completing ATF Forms stating that Blackwater had transferred the firearms to the King of Jordan, after they "realized they were unable to account for the disposition of the firearms," Jackson and Slezak, along with a third Blackwater employee Gary Flannelly, completed four ATF Form 4473s, attached as exhibits to the government's opposition, providing that Blackwater transferred the firearms to Flannelly (exhibits 1 and 3), Slezak (exhibit 2), and Jackson (exhibit 4), who signed the forms as "Transferee (Buyer)." (Opp. at 3, exhibits 1-4).

---

[7] The indictment includes receipt and possession of the Steyer machine guns as part of the description of overt acts under the heading "Camden County Machine Guns" (Indictment at 12). Although the indictment does not state so explicitly, it implies thus that receipt and possession of the Steyer machine guns also was carried out through a purchase involving the CCSD.

Thus, they completed the forms "to give the appearance that the weapons had been purchased by them as individuals." (Indictment at 8). In August 2005, Slezak escorted an ATF inspection team to Blackwater's federally licensed firearms dealer records, which Slezak knew contained these falsified ATF Form 4473s. (Indictment at 14).

The government alleges this same conduct as overt acts in furtherance of the conspiracy, as well as the basis for substantive counts two through six. Particularly, the indictment charges Jackson and Slezak with felony violations for knowingly making false statements with respect to information to be kept in the records of a federally licensed firearms dealer, and aiding and abetting others in doing so, in violation of 18 U.S.C. § 924(a)(1)(A) and 18 U.S.C. § 2.

The government's exhibits, which include the four ATF Forms involved in the conspiracy count and counts two through six, help illustrate the alleged basis for criminal liability in the substantive counts. The first ATF Form (Exhibit 1) states in Section B that the "Trade/corporate name and address of transferor" is Blackwater Lodge & Training Center, and it is signed by Slezak on June 20, 2005, listing his title as "weapon custodian." The form states in Section A that the Transferee (Buyer) is Flannelly, and Section A is signed by Flannelly on June 8, 2005.

According to the government, even though Jackson did not sign the form, count two of the indictment charges Jackson with a felony violation for causing or aiding and abetting Flannelly in signing as purchaser. (Opp. at 3). The government concedes in its opposition to the motion to dismiss that count three charges Slezak with a misdemeanor for falsely signing the form as dealer, and charges Jackson with misdemeanor aiding and abetting Slezak. (Opp. at 3 n. 2).[8]

---

[8] As set forth in the discussion below, 18 U.S.C. § 924(a)(1)(A) generally provides felony punishment for making false statements on an ATF form, whereas 18 U.S.C. § 924(a)(3) specifically provides misdemeanor punishment for "[a]ny licensed dealer" who makes false statements on an ATF form.

6

The second ATF Form (Exhibit 2) states in Section B that the "Trade/corporate name and address of transferor" is Blackwater Lodge & Training Center, and it is signed by Flannelly on June 20, 2005, listing his title in a manner that is not clearly decipherable. The form states in Section A that the Transferee (Buyer) is Slezak, and Section A is signed by Slezak on June 20, 2005. According to the government, count four charges Slezak with a felony violation for signing the form as purchaser, and charges Jackson with felony aiding and abetting Slezak. (Opp. at 3).

The third ATF Form (Exhibit 3) states in Section B that the "Trade/corporate name and address of transferor" is Blackwater Lodge & Training Center, and it is signed by Slezak on June 20, 2005, listing his title as "weapons custodian." The form states in Section A that the Transferee (Buyer) is Flannelly, and is signed by Flannelly on June 20, 2005. According to the government, count five charges Jackson and Slezak with felony aiding and abetting Flannelly. (Opp. at 3).

The fourth ATF Form (Exhibit 4) states in Section B that the "Trade/corporate name and address of transferor" is Blackwater Lodge & Training Center, and it is signed by Slezak on August 19, 2005, listing his title as "weapons custodian." The form states in Section A that the Transferee (Buyer) is Jackson, and is signed by Jackson on August 19, 2005. According to the government, count five charges Jackson with a felony violation for signing as purchaser, and Slezak with felony aiding and abetting Jackson. (Opp. at 3).

## C. Short Barrel Rifles

Another alleged means of the conspiracy emanated from Blackwater's desire to provide short barrel rifles to overseas security contractors. Between 2003 and 2007, Jackson and others at Blackwater purchased 227 short barrels compatible with M4 rifles and armorers at Blackwater installed the short barrels on what had been long rifles, without registering the weapons as such. Before shipping them overseas, Blackwater detached the short barrels from the receivers they had

7

already been mated with, but packaged them in a manner permitting them to be reassembled easily. The indictment originally charged Jackson in count thirteen with receiving and possessing a number of unregistered short barrel rifles, and aiding and abetting others in doing so, in violation of 26 U.S.C. § 5861(d) and 18 U.S.C. § 2, but on November 21, 2011, the court granted the government's motion to dismiss this count, and to strike from the conspiracy count the allegation that registration of the short barrel rifles was "required by law." November 21, 2011, order at 1 (referencing Indictment at 9). In addition, the court accepted the government's representation that, where the indictment alleges the defendants conspired to commit offenses against the United States, the offense of receiving and possessing unregistered firearms, one of the enumerated objects of the conspiracy at page 6 of the Indictment, refers only to automatic weapons referenced in counts ten through twelve of the indictment, and not to short barrel rifles. See November 21, 2011, order at 1.[9]

## D. Obstruction of Justice

The indictment alleges that obstructive conduct by Howell and Bundy constituted another means of the conspiracy, and overt acts in furtherance of the conspiracy. The government alleges that in March, 2009, Howell told another Blackwater employee that informing federal authorities of the existence of approximately 33 unregistered short barrel rifles then being held at the Moyock facility was "not an option." (Indictment at 15). Howell and Bundy then directed other employees to move a number of short barrel rifles from one armory to a different armory and convert them to long barrels, with the objective of avoiding detection in an expected ATF inspection and frustrating a federal investigation.

---

[9] While the government struck the phrase "as required by law" from the description of that portion of the conspiracy related to short barrel rifles, the government did not strike, nor did the court order the government to strike any other portions of the conspiracy count related to short barrel rifles, including the description of "manner and means" related to short barrel rifles, and the "overt acts" related to short barrel rifles. (See Indictment at 9, 10-12). As noted in the discussion below, overt acts in furtherance of a conspiracy need not, in and of themselves, constitute criminal behavior.

After the alteration was completed, and in an attempt to shield themselves from their conduct, Howell urged the President of Blackwater at the time to sign a letter, intended to be back dated, which would have given the false impression that the President of Blackwater had directed the alteration of the short barrel rifles. With respect to concealment of the short barrel rifles, count fourteen charges Howell and Bundy with instructing others to conceal an object, with the purpose of impairing the object's availability for use in an official proceeding, in violation of 18 U.S.C. § 1512(b)(2)(B) and 18 U.S.C. § 2. Count fifteen charges Howell with obstructing the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, in violation of 18 U.S.C. § 1519 and 18 U.S.C. § 2.

## DISCUSSION

### A. Standard of Review

At any time before trial, defendants can raise a motion alleging a defect in the indictment. Fed. R. Crim. P. 12(b)(3)(B). In addition, "at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." Id. To warrant dismissal of a count of the indictment, a defendant must "demonstrate that the allegations therein, even if true, would not state an offense." United States v. Thomas, 367 F.3d 194, 197 (4th Cir. 2004). "It is elementary that a motion to dismiss an indictment implicates only the legal sufficiency of its allegations, not the proof offered by the Government." United States v. Terry, 257 F.3d 366, 371 (4th Cir. 2001) (King, J., concurring). The Fourth Circuit has observed that

[T]he sufficiency of an indictment should be determined by practical, as distinguished from purely technical, considerations. Does it, under all of the circumstances of the case, tell the defendant all that he needs to show for his defense, and does it so specify that with which he is charged that he will be in no danger of being a second time put in jeopardy? If so, it should be held good.

United States v. Matzkin, 14 F.3d 1014, 1019 (4th Cir. 1994).

9

Federal Rule of Criminal Procedure 7 provides that "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). Further, "[u]nless a defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment[.]" Fed. R. Crim. P. 7(c)(2).

On June 1, 2012, defendants filed motions to dismiss that are the subject of this order. Simply put, defendants move to dismiss count one, pursuant to Fed. R. Crim. P. 12(b)(3), on the basis that count one describes a series of distinct schemes that properly may be charged only as multiple conspiracies in separate indictments. (See DE ## 238, 239). Jackson and Slezak move to dismiss counts two through six, pursuant to Fed. R. Crim. P. 12(b)(3), arguing that because they are licensed dealers they are exclusively subject to misdemeanor punishment under 18 U.S.C. § 924(a)(3), rather than felony punishment under § 924(a)(1)(A) which the indictment charges. (See DE ## 246, 247). Jackson and Mathews move to dismiss counts eight, nine, eleven, and twelve, pursuant to Fed. R. Crim. P. 12(b)(3), on the basis that 18 U.S.C. § 922(o), the violation charged in counts eight and nine, is unconstitutionally vague, and 26 U.S.C. § 5861(d), the violation charged in counts eleven and twelve, should be interpreted consistent with § 922(o). (See DE ## 244, 245). Finally, Howell moves to dismiss counts fourteen and fifteen, and Bundy to dismiss count fourteen, pursuant to Fed. R. Crim. P. 7(c)(1) and 12(b)(3)(B), on the basis that these counts fail to allege inapplicability of 18 U.S.C. § 1515(c) as an essential element, and because they fail to apprise Howell and Bundy of the proceeding or investigation that they allegedly obstructed. (See DE ## 242, 248).

## B. Analysis

### 1. Conspiracy

Defendants argue that count one "describes a series of distinct schemes that properly may be charged only as multiple conspiracies in separate indictments." (Defs' Mem. at 1). Because the doctrine of duplicity forbids the pleading of multiple conspiracies within a single count, they argue, count one is defective on its face and should be dismissed. (Id.). The government counters that, under a totality of the circumstances analysis, the government properly has charged defendants with a single overarching conspiracy. (Opp. at 12). For the reasons stated below, while the court agrees with the government that the indictment charges a single conspiracy as to defendants Jackson, Slezak, and Matthews, the indictment fails to properly allege that Howell and Bundy joined the same conspiracy.

"To prove a conspiracy under 18 U.S.C. § 371, the government must establish an agreement to commit an offense, willing participation by the defendant, and an overt act in furtherance of the conspiracy." United States v. Tucker, 376 F.3d 236, 238 (4th Cir. 2004). "The gravamen of the crime of conspiracy is an *agreement* to effectuate a criminal act." United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (en banc) (emphasis in original). "It is of course elementary that one may be a member of a conspiracy without knowing its full scope, or all its members, and without taking part in the full range of its activities or over the whole period of its existence." Id. at 858 (quotations omitted). It is enough to convict a defendant of conspiracy if the defendant "joins the conspiracy with an understanding of the unlawful nature thereof and willfully joins in the plan on one occasion." Id. (citation omitted).

Generally, the doctrine of duplicity forbids joining in a single count two or more distinct and separate offenses. See United States v. Burns, 990 F.2d 1426, 1438 (4th Cir. 1993). Accordingly,

11

"it is improper to charge a single conspiracy when multiple conspiracies exist." United States v. Urbanik, 801 F.2d 692, 695 (4th Cir. 1986); see United States v. Allmendinger, No. 3:10-CR-248, 2011 WL 1157554, at *2 (E.D. Va. Mar. 7, 2011) ("It is unquestioned that an indictment cannot charge two conspiracies in a single count."). However, "if the indictment as drawn would permit the government to prove a set of facts that would support a finding of one conspiracy, then the indictment is proper and the decision as to how many conspiracies existed is for the jury." United States v. Berlin, 707 F. Supp. 832, 837 (E.D. Va. 1989) (citing Urbanik, 801 F.2d at 695); Allmendinger, 2011 WL 1157554, at *2 (same); see also United States v. Leavis, 853 F.2d 215, 218 (4th Cir. 1988) (question whether the evidence shows a single conspiracy or multiple conspiracies is "singularly well-suited to resolution by the jury") (citation omitted).

"Whether there is a single conspiracy or multiple conspiracies depends upon the overlap of key actors, methods, and goals." Leavis, 853 F.2d at 218. "A single conspiracy exists when the conspiracy had the same objective, it had the same goal, the same nature, the same geographic spread, the same results, and the same product." United States v. Jeffers, 570 F.3d 557, 567 (4th Cir. 2009). Other factors in distinguishing a single conspiracy from multiple conspiracies include existence of long-standing business relationships, and "interdependence" among components of a conspiracy. United States v. Stewart, 256 F.3d 231, 251 (4th Cir. 2001). A "pattern of mutual cooperation between participating individuals demonstrates the requisite level of interdependence to support a conspiracy." Stewart, 256 F.3d at 251 (4th Cir. 2001) (citing United States v. MacDougall, 790 F.2d 1135, 1146 (4th Cir.1986)). "Interdependence is established when the activities of alleged co-conspirators in one aspect of the charged scheme are necessary or advantageous to the success of the activities of co-conspirators in another aspect of the charged scheme, or the success of the venture as a whole." Id.

Applying these factors, the court concludes that the government properly has charged a single conspiracy in count one among defendants Jackson, Matthews, and Slezak. According to the indictment, defendants shared a common goal to gain an advantage over competitors by circumventing federal firearms laws. (Indictment at 7). Although these conspirators are alleged to have agreed to commit multiple different offenses, with overt acts taking place at different points in time, each of the objects of the conspiracy and overt acts in which they participated were related to the overall goal of facilitating contracts through avoidance of recordkeeping and registration requirements in federal firearms laws.

For example, Jackson and Mathews allegedly avoided machine gun registration requirements by setting up CCSD as a straw purchaser. (Id. at 7-8, 12). Jackson and Slezak allegedly concealed a transfer of guns to the King of Jordan by falsifying Blackwater's ATF forms. (Id. at 8). Jackson allegedly directed employees to construct short barrel rifles and ship them overseas in a manner that shielded them from the charge of exporting regulated weapons. (Id. at 9).

In addition, the fact that Jackson, Mathews, and Slezak were all engaged in one general business venture, and geographically situated in the same corporate headquarters in a relatively isolated location, during the same time period, tends to show under the totality of circumstances alleged that the defendants were in close contact and functioned as interdependent members of the conspiracy. (See Indictment at 1-5). Interdependence may be further inferred where activities of alleged co-conspirators in one aspect of the charged scheme – for example Jackson and Mathews' role in obtaining Camden County machine guns – was advantageous to the success of the venture as a whole – obtaining government contracts using such guns.

Defendants argue that the "object of the conspiracy" as stated in the indictment – "to gain an advantage over competitors" and "profit from obtaining and keeping Government contracts" –

is an insufficient common purpose because that is the goal of every for-profit corporation. (Id. at 13). This argument, however, misses that the purpose of the conspiracy as alleged in the indictment is not just to gain corporate profits, but to do so through circumvention of federal firearms laws. (See Indictment at 6-7).

The allegations in the indictment permit the inference that the overarching goal which unites the single conspiracy is a common purpose to circumvent the federal firearms laws in the operation of Blackwater's business. See Opp. at 12 ("Each of the charged crimes were committed for the purpose of circumventing the federal gun laws for the purpose of enriching corporate profits and ultimately themselves."). While this goal overlaps with the object of the conspiracy to gain corporate profits, the two are not exclusive but rather interrelated.[10]

With respect to timing and membership in the conspiracy, the court finds helpful comparison to several Fourth Circuit cases where the court found evidence sufficient to support a determination of a single conspiracy, despite time breaks between phases of a conspiracy or involvement of different actors in schemes separated by time. In each of these cases, acts of co-conspirators were linked through common objectives and means of the conspiracy. See, e.g., Leavis, 853 F.2d at 219 (single conspiracy existed, where co-conspirators carried out and completed drug importation activities in 1985, and defendant agreed to assist with second similar importation plot as a pilot after eight-month gap in activity); Urbanik, 801 F.2d at 694-96 (defendant charged in single drug distribution conspiracy, where his activity ceased in 1979, but other co-conspirators continued drug

_____

[10] Defendants suggest that the government should be estopped from relying on any profit making or competitive advantage purpose as a basis for establishing a single conspiracy, because the government has taken the position in a prior discovery dispute that the focus of the trial will be on whether defendants agreed to violate federal firearms laws, and because Magistrate Judge Webb agreed and deemed "discovery requests related to the object of the conspiracy" as immaterial to the defense. (Mem. at 13). In the government's opposition to the motion to dismiss, the government repeatedly refers to the profit-making goal as a component of the common purpose of the conspiracy, along with the overarching goal of circumventing federal firearms laws. (See Opp. at 6, 9, 10, 11, 12). The court's discussion here does not foreclose defendants from seeking discovery which they contend is relevant and helpful to the defense, or from seeking reconsideration of prior discovery rulings which they may contend were too narrow in light of the present ruling.

14

distribution activity, through connections established by defendant, independently into 1982); United States v. Raggins, 840 F.2d 1184, 1190 (4th Cir. 1988) (in analyzing conspiracy charges for double-jeopardy violation, noting that each of nine "separate"conspiracies alleged in two indictments could have been "manifestations of a single continuing conspiracy" to obtain immigration visa for Jamaican aliens through marriage to an American citizens in a fifty-mile radius over a two year time period).

In sum, based on the totality of the circumstances alleged in the indictment, the court finds that the indictment charges Jackson, Mathews, and Slezak, in a single overarching conspiracy to circumvent federal gun laws for the purpose of enriching corporate profits.

By contrast, the indictment does not allege that Howell and Bundy joined in this same conspiracy. Rather, as confirmed by the government in its brief, their obstructive conduct was "not committed to perpetrate the common scheme or plan" of the other defendants, but rather "was committed for the purpose of covering it up." (Opp. at 12). This is a critical distinction because while "acts of concealment done in furtherance of the main criminal objectives of the conspiracy" can be charged as a single conspiracy, "acts of concealment done after these central objectives have been attained, for the purpose only of covering up the crime" must be charged separately. United States v. Wilson, 624 F.3d 640, 656 n.18 (4th Cir. 2010) (quoting Grunewald v. United States, 353 U.S. 391, 405 (1957)). "Acts of covering up, even though done in the context of a mutually understood need for secrecy, cannot themselves constitute proof that concealment of the crime after its commission was part of the initial agreement among the conspirators." United States v. Runnells, 36 F. Supp. 2d 696, 700 (E.D. Va. 1998). This distinction "frequently turns on the proximity of the concealment acts to the core of the conspiracy, i.e., there is a difference between concealment acts

committed one hour after the object of the conspiracy has been achieved and one year later." United States v. Caso, Nos. 90-5830, 90-5831, 1991 WL 101559 *7 (4th Cir. June 14, 1991).

In addition to the government's own description of the obstructive conduct in its brief, the allegations in the indictment confirm that the alleged obstructive conduct by Howell and Bundy was separated in several significant respects from the alleged conspiracy between Jackson, Mathews, and Slezak. First, the obstructive conduct related to the movement of a limited number of short barrel rifles from one armory to a different armory at Blackwater's headquarters, whereas none of the objects of the conspiracy charged in count one involves possession of short barrel rifles. (Compare Indictment at 6 with Indictment at 15, 21-22). As noted above, the court's November 21, 2011, order granting the government's motion to dismiss count thirteen of the indictment accepted the government's representation that, where the indictment alleges the defendants conspired to commit offenses against the United States, the offense of receiving and possessing unregistered firearms listed one of the enumerated objects of the conspiracy at page 6 of the Indictment, refers *only* to automatic weapons referenced in counts ten through twelve of the indictment, and not the short barrel rifles referenced in original count thirteen. See November 21, 2011, order at 1. Thus, there is no commonality between the unlawful objectives of the alleged overarching conspiracy to circumvent firearms laws, and the obstructive conduct of Howell and Bundy.[11]

Even considering that the indictment alleges possession of short barrel rifles as a manner and means, and overt act, in furtherance of the conspiracy charged in count one, conduct by Jackson and others to construct short barrel rifles is alleged to have taken place between 2003 and 2005, with

---

[11] See, e.g., United States v. McMahan, No. 97-4484, 1998 WL 559722 *3 (4th Cir. September 2, 1998). (holding that earlier drug conspiracy was separate conspiracy, for double jeopardy purposes, from obstruction of justice conspiracy commencing two years later whose goal was to prevent seizure and forfeiture of property obtained through drug proceeds, noting that "[t]hough the earlier conspiracies provide context for the current conspiracy, the overt acts in each are different").

16

additional purchases of short barrels taking place until 2007. Obstructive conduct of Howell and Bundy follow after an approximately two year gap in time, during which Jackson and Howell were removed from their positions as President and Vice President. While the court recognizes that "one may be a member of a conspiracy . . . without taking part in the full range of its activities or over the whole period of its existence," Burgos, 94 F.3d at 858, the government must nonetheless allege that Howell and Bundy, as alleged late-entrants into the conspiracy, "join[ed] in the plan" of the overarching conspiracy. See id. Here, the government expressly concedes that conduct by Howell and Bundy was "not committed to perpetrate the common scheme or plan" of the other defendants. (Opp. at 12).[12]

Finally, and as discussed further in the final section of this order, where Howell is alleged to have been an attorney for Blackwater, and Bundy is alleged to have acted at his direction, counts fourteen and fifteen must be dismissed for failure to allege that they did not provide lawful, bona fide, legal representation services, and for failure to specify the official proceeding or investigation which they are alleged to have obstructed. While overt acts in furtherance of a conspiracy need not themselves be unlawful, see United States v. May, 359 F.3d 683, 694 n.18 (4th Cir. 2004), dismissal of these charges combined with dismissal of count thirteen makes the connection between Howell and Bundy to the overarching conspiracy to circumvent firearms laws all the more attenuated.

The court finds comparison of this case to United States v. Bollin, 264 F.3d 391 (4th Cir. 2001) particularly helpful to this determination. Convictions in Bollin arose out of a "wide-ranging investment fraud scheme, carried out by a network of conspirators," including investment traders,

---

[12] Further, as to the other objects of the conspiracy, including the Camden County and King of Jordan firearms, only a single connection is made to the alleged obstructive conduct by Howell or Bundy, with reference made to Bundy's conduct in keeping from another employee the identity of contents of a gun safe containing the Camden County Guns. (Indictment at 13). In light of the circumstances discussed above, this alone is insufficient to show she joined in the conspiracy to circumvent firearms law.

17

brokers, investment salespersons, and an attorney who advised and assisted with alleged fraudulent investments and money laundering. 264 F.3d at 400. Among other allegations, after one of the co-conspirators was indicted for involvement in the investment fraud scheme, the attorney advised another co-conspirator how to use money to pay back certain investors for "damage control," which formed one of the grounds for the obstruction charge. Id. at 403. All conspirators were charged with conspiring to commit wire fraud, securities fraud, and obstruction of justice, in violation of 18 U.S.C. § 371, in addition to multiple corresponding individual violations of federal law. Id. at 404. The court held in that case that the evidence established a single conspiracy, as opposed to multiple separate conspiracies, even including the obstructive conduct by the attorney:

> Although the conspiracy had multiple objects-wire fraud, securities fraud, and obstruction-the objects clearly were related to the overall goal of defrauding investors through fraudulent offshore debentures trading programs. . . . The very structure of the scheme in this case required the conspirators to play different roles-brokers, project managers, and traders-to carry out the fraud and obscure the disposition of funds placed in the trading programs. *[The attorney] prepared the different instruments used to carry out the scheme to defraud investors and directed the opening of the offshore trusts.*

264 F.3d at 406 (emphasis added). Thus, in contrast to the present case, the attorney defendant in Bollin was part of the overarching conspiracy because he prepared instruments used to carry out the scheme, directed central operations of the scheme, and was "involved with [the other defendants] from the very beginning of the conspiracy." Id. at 406 n. 9. There is no comparable allegation in this case that Howell or Bundy were involved with the other defendants in the scheme to circumvent firearms laws, through the Camden County or King of Jordan arrangements. More particularly, there is no allegation that Howell or Bundy advised the other defendants how to carry out their scheme, much less the particular objects of the conspiracy set forth in the indictment. Accordingly, Bollin illustrates well the critical type of allegations, not present in this case, needed to link obstructive conduct to conspiratorial conduct by others.

18

In sum, the indictment has failed to plead sufficient facts supporting inclusion of Howell and Bundy in the overarching alleged conspiracy to circumvent firearms laws set forth in count one of the indictment. Although the government has alleged a single overarching conspiracy involving Jackson, Mathews, and Slezak, the allegations in the indictment do not support including Howell and Bundy in this same conspiracy charge.

Having so determined, there remains an issue of the proper remedy. Generally, "[w]here an indictment or information contains a duplicitous count, the proper remedy is to dismiss the count or to require the United States to elect which offense it desires to pursue." United States v. Pleasant, 125 F. Supp. 2d 173, 176 (E.D. Va. 2000). "The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment." Stirone v. United States, 361 U.S. 212, 218-19 (1960). Accordingly, the Fourth Circuit has recognized that "only the grand jury may broaden or alter the charges in the indictment." United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999).

Defendants have cited only a limited number of cases, all outside of the Fourth Circuit, where a court has addressed the proper remedy for a duplicitous conspiracy count, and the court has identified no such case in the Fourth Circuit.[13] Of those cited, United States v. Marlinga, No. CRIM 04-80372, 2005 WL 513494 (E.D. Mich. Feb. 28, 2005), though not binding authority, provides a useful comparison. There, two defendants were charged in a single conspiracy count with conspiracy to deprive citizens of a right to honest services, where the defendants allegedly offered to make and

---

[13] In Pleasant, the only Fourth Circuit case identified which addresses remedy for duplicity upon a motion to dismiss indictment, the court determined that two counts of the indictment charging offenses under § 924(c) were duplicitous because the indictment charged two different prohibitions set forth in same statutory text: first, using or carrying a firearm, and second, possessing a firearm. 125 F.Supp.2d at 176. The court determined that the problem presented by the counts was "not so much the failure to plead an essential element as it is the failure to properly plead the essential elements." Id. at 184. The court reasoned that allowing the government to strike one of the prohibitions as "surplusage" would "require the court to identify the offense which the grand jury intended to charge and delete the rest of the text of the indictment." Id. at 184. If the court followed this approach, it reasoned, "the court would in essence rewrite the indictment," violating the prohibition on "altering indictments of its own volition." Id.

19

accept campaign contributions to a prosecutor running for Congress, in exchange for certain prosecutorial acts in two pending court cases. Id. at * 2. The court determined that although one conspiracy was charged, count one actually comprised two separate conspiracies pertaining to each of the two pending court cases. Id. at *4. Thus, the court determined that count one was duplicitous. Id.

With respect to remedies, the court first recognized that a jury instruction would be an unsatisfactory remedy where the defect in the indictment is recognized in advance of trial, and the indictment is "duplicitous on its face." Id. at *6. The court reasoned, however that "[d]ismissal would also be inappropriate," noting that "[t]he entire count should not be dismissed when a less drastic ruling will suffice." Id. at *7 (citing Reno v. United States, 317 F.2d 499, 502 (5th Cir. 1963)). Thus, noting in that case that the count was not only duplicitous but also misjoined, the court ordered the government to "reformulate Count One of the indictment," specifically by electing the charge upon which it will rely in one charge and bringing the other charge in a separate indictment. Id.

Here, the flaw with the conspiracy count is not that it contains allegations of two equally viable conspiracies, but rather that it contains allegations of one overarching conspiracy in which Howell and Bundy played no role. Thus, there is no basis, as in Marlinga, to direct the government to bring both charges in separate indictments. Rather, under the circumstances here, where the case now has been pending almost three years and where the court also has decided to dismiss the only other charges of the indictment against Howell and Bundy, the proper remedy is to simply dismiss Howell and Bundy from count one, and allow count one to continue as to the remaining defendants. Such a course would not "broaden or alter the charges in the indictment," Randall, 171 F.3d at 203, but would instead narrow the application of count one to fewer defendants. Indeed, the court

Case 2:10-cr-00008-FL   Document 350   Filed 02/04/13   Page 20 of 43

previously has dismissed portions of count one, with consent of the parties, without dismissing the entire count or directing the government to reformulate the indictment. See November 21, 2011, order. This same approach is appropriate here.

Based on the foregoing, the court will grant in part and deny in part defendants' motion to dismiss count one. Count one is dismissed as to defendants Howell and Bundy, but remains against defendants Jackson, Mathews, and Slezak.

### 2. False Statements in ATF Forms

Jackson and Slezak move to dismiss counts two through six, pursuant to Fed. R. Crim. P. 12(b)(3), arguing that because they are licensed dealers they are exclusively subject to misdemeanor punishment under 18 U.S.C. § 924(a)(3), rather than felony punishment under § 924(a)(1)(A) which the indictment charges. (See DE ## 246, 247). In opposition, the government concedes that defendants are subject to only misdemeanor punishment on count three, but argues that defendants are subject to felony punishment for the remaining counts because they are alleged to have made false statements in their capacity as "putative purchaser" of the weapons, or aided and abetted the same. (Opp. at 1).

With respect to count three, the government argues that the remedy is not to dismiss the count but rather to correct the citation to specify a misdemeanor violation under § 924(a)(3), pursuant to Fed. R. Crim. P. 7(c)(2). (Id. at 8). Jackson and Slezak clarified at argument that, although their motion is captioned a motion to dismiss, what they are seeking is correction of the citation each of counts two through six to specify a misdemeanor violation. (See December 13, 2012, Hrg. Tr. at 47-48).

The court begins its analysis with the plain language of the statutes under which defendants are charged. Section 924(a)(1)(A) provides in pertinent part as follows:

> *Except as otherwise provided in this subsection, subsection (b), (c), (f), or (p) of this section, or in section 929,* whoever-
> (A) knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter;
> ....
> (D) *willfully* violates any other provision of this chapter,
> shall be fined under this title, imprisoned not more than five years, or both.

18 U.S.C. § 924(a)(1) (emphasis added). The aiding and abetting statute, under which the government also charges defendants, provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2.

The misdemeanor provision under which defendants contend they should be charged provides:

> *Any licensed dealer, licensed importer, licensed manufacturer, or licensed collector* who knowingly-(A) makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter ... shall be fined under this title, imprisoned not more than one year, or both.

18 U.S.C. § 924(a)(3) (emphasis added).

Based on analysis of the statutory language and relevant court decisions interpreting the statute, the court concludes that Jackson and Slezak are not properly charged with felony violations under § 924(a)(1)(A). Instead, as employees of a firearms dealer, alleged to have acted together to falsify dealer's forms in an effort to account for disposition of firearms by the dealer, they must be charged as "[a]ny licensed dealer," pursuant to the misdemeanor provision in § 924(a)(3).

Section 924(a)(1) provides a general penalty provision that is applicable "[e]xcept as otherwise provided" in subsection (a), (b), (c), (f), or (p) of the section. In turn, subsection (a)(3), pertinent here, is a more specific misdemeanor penalty provision applicable only to "[a]ny licensed dealer, licensed importer, licensed manufacturer, or licensed collector." Accordingly, because the

22

statute has "otherwise provided" for the punishment of licensed dealers, § 924(a)(1) is inapplicable to false statements by licensed dealers.

Although some courts outside of the Fourth Circuit have adopted the view that prosecutors have discretion whether to charge licensed dealers with a felony or a misdemeanor under § 924(a), the government here does not advance this as a basis for the felony charges in this case. (See Opp. at 1). Although the Fourth Circuit has not addressed the issue, district courts within the Fourth Circuit have rejected this view, noting, for example, that under canons of statutory construction, the more specific provision takes precedence over the more general provision, and any ambiguity on this point should be resolved in favor of lenity. See United States v. Dedrick, 665 F. Supp. 2d 535, 537-38 (W.D.N.C. 2009); United States v. Wegg, 919 F. Supp. 898, 903 (E. D. Va. 1996); United States v. Percival, 727 F.Supp. 1015, 1017-18 (E. D. Va. 1990).

This approach is in accord with principles set forth in Supreme Court and Fourth Circuit law. See Edmond v. United States, 520 U.S. 651, 657 (1997) (holding that "where a specific provision conflicts with a general one, the specific governs"); United States v. Mitchell, 39 F.3d 465, 475 (4th Cir.1994) (applying a more specific penalty provision to punish criminal conduct instead of a more general penalty provision); Yi v. Federal Bureau of Prisons, 412 F.3d 526, 535 (4th Cir. 2005) (noting that rule of lenity "applies not only to resolve issues about the substantive scope of criminal statutes, but to answer questions about the severity of sentencing").

The government does not dispute that Jackson and Slezak may themselves be considered licensed firearms dealers, by virtue of their employment as agents of a licensed firearms dealer. Indeed, the government concedes that count three of the indictment charges Jackson and Slezak with a misdemeanor violation as dealers "based on Slezak's false statement as the dealer." (Opp. at 3

n.2). See <u>United States v. W.F. Brinkley & Son Const. Co., Inc.</u>, 783 F.2d 1157, 1160 (4th Cir. 1986) ("Of course, a corporation acts through its officers or agents.").

Rather, the government argues that § 924(a)(3) applies only to statements of firearms dealers *as dealers*, and it cannot be read to exclude felony liability for statements of firearms dealers acting in the capacity as *purchasers*. (Opp. at 5). The court rejects this arguments for two reasons.

First, the government's argument reads into the statutory text a limitation that is not stated therein. By its plain language, section 924(a)(3) applies to "*[a]ny* licensed dealer, licensed importer, licensed manufacturer, or licensed collector who knowingly-(A) makes *any* false statement or representation *with respect to the information required* by the provisions of this chapter to be kept in the records of a person licensed under this chapter." 18 U.S.C. § 924(a)(3) (emphasis added). The provision is thus not limited only to licensed dealers acting as dealers, as opposed to dealers acting in the capacity as purchasers. Rather, it applies to any licensed dealer who makes any false statement, so long as that false statement is "with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter." <u>Id.</u> Thus, because Jackson and Slezak are themselves "licensed dealers," and they are alleged to have made or aided and abetted a "false statement or representation" (here, the false representation that they are purchasers of the firearms), with respect to the information required to be kept in the records of a person licensed" under the statute (here, the records of Blackwater), they are subject to misdemeanor liability only under § 924(a)(3).

Second, even if § 924(a)(3) does not apply to dealers acting in the capacity as purchasers, Jackson and Slezak are not alleged merely to have acted in capacity as purchasers. Rather, they are alleged to have falsified firearms forms as part of a conspiracy together with other employees of Blackwater, to enhance Blackwater's corporate profits through circumvention of firearms laws.

(Indictment at 7-8). The government here asks the court to view its allegations in a very limited, formalistic, respect, focusing on the location of the signature of Jackson, Slezak, and Flannelly on the Form 4473s. (Mem. at 4). But elsewhere, the government has urged the court to view the allegations of the indictment in light of their "factual context," asserting that "[t]he filing of the fictitious 4473s," – the very conduct charged in counts two through six – was "*aimed at circumventing federal firearms laws which hindered corporate profits.*" (Opp. to Mot. to Dismiss Count One at 6) (emphasis added). Indeed the indictment alleges that the conduct charged in counts two through six constituted both a manner and means, as well as overt acts in furtherance of, the overarching conspiracy whose broad goal was to enhance corporate profits. (Indictment at 7), and whose more specific goal was to account for disposition of weapons in company records to avoid mention of the gifting of the weapons to the King of Jordan. (Indictment at 8).

The allegations regarding falsification of Form 4473s thus describe conduct by employees of the firearms dealer in furtherance of their interests as employees. Indeed, according to the government, defendants were part of a close-knit group of employees, whose overarching motivation was "pleasing their employer and promoting the company's profit margin," (Opp. to Mot. to Dismiss Count One at 6), and "[s]ince firearms were central to much of *their business model*, circumventing the law regulating them became a greater and greater temptation." (Id.) (emphasis added). The critical factor here is that, as alleged in the indictment, the defendants never shed their status as employees of the firearms dealer, rather they take advantage of their status as employees of the firearms dealer to falsify the dealer's forms.

In sum, it is immaterial Jackson, Slezak, or Flannelly, signed their names as a "putative purchaser" or "dealer" on the forms, or aided each other in doing so, given that Jackson and Slezak both are alleged to have fabricated the forms in furtherance of the unlawful business operations of

25

the firearms dealer. As employees of a firearms dealer who allegedly conspired between and among themselves, and with another Blackwater employee, to falsify records of the federal firearms dealer, Jackson and Slezak must be charged under the statutory provision applicable to licensed dealers, § 924(a)(3).

Cases cited by the government are inapposite because they involve circumstances, unlike in the present case, where defendants are alleged to have aided and abetted activity of non-dealers who are members of the public. For example, in both United States v. Carney, 387 F.3d 436 (6th Cir. 2004), and United States v. Rietzke, 279 F.3d 541 (7th Cir. 2002), the courts upheld felony convictions of federally-licensed firearms dealers who were alleged to have sold firearms to a convicted felon who repeatedly came into defendants' gun stores, accompanied by women who would falsely identify themselves as purchasers of the weapons on ATF Form 4473s, whereupon the convicted felon provided the purchase money to defendants, and walked out of the store with the weapons. See 387 F.3d at 442; 279 F.3d at 542-43. Unlike defendants in Carney and Rietzke, defendants in the case at bar are not alleged to have aided and abetted non-dealer members of the public, but instead are alleged to have aided and abetted each other, employees of a licensed firearms dealer. As such, this case is critically distinguishable from both Carney and Rietzke.[14]

The government argues that one of the cases cited by defendants, United States v. Dedrick, is unhelpful to defendants because it did not involve a determination of whether a licensed firearms dealer could be charged with a felony violation of §924(a)(1) for aiding and abetting a putative

---

[14] Similarly distinguishable is United States v. Al-Muqsit, 191 F.3d 928 (8th Cir. 1999) vacated in part on other grounds, by United States v. Logan, 210 F.3d 820 (8th Cir. 2000) (en banc), in which the Eighth Circuit upheld felony convictions of two federally-licensed firearms dealers who sold 109 firearms to co-conspirators who were members of the public who in turn sold them "at a substantial profit on the streets of Chicago," where the dealers and the co-conspirators evaded ATF reporting requirements by using straw purchasers to fill out the forms for the guns bought by and transferred to the co-conspirators. See 191 F.3d at 932. Al-Muqsit also adopts the view that prosecutors have discretion whether to charge gun dealers under § 924(a)(1)(A) or § 924(a)(3), see 191 F.3d at 935-36, which, as noted above, is a view rejected by courts in the Fourth Circuit and not advanced by the government here.

purchaser of firearms. (Opp. at 6). The government's attempt to discredit Dedrick is flawed in two respects.

First, in Dedrick, the defendants were convicted in a firearms sale scheme very similar to that in Carney and Rietzke. Defendants were two employees of a licensed firearm dealer who sold firearms to members of the public (or federal agents posing as members of the public) who came to their store, and who used straw purchasers to fill out the forms. See Dedrick, 665 F.Supp.2d at 536.[15] As such, Dedrick is notable in its rejection of felony liability even under such facts, where a firearms dealer who sold firearms to a third-party purchaser and putative purchaser.

Second, defendants in Dedrick were charged with both violating 18 U.S.C. § 924(a)(1)(A), and aiding and abetting the same. 66 F. Supp. 2d at 536. Although the jury convicted the defendants without specifying whether defendants were convicted of 18 U.S.C. § 924(a)(1)(A), the court discusses aiding and abetting liability in a manner that is helpful to defendants here. 66 F. Supp. 2d at 540 n. 6. In particular, in holding that the felony convictions should be converted to misdemeanor convictions, the court remarked "[t]he jury could just as easily have found, as the indictment alleges, that the Defendants, all of whom were licensed firearms dealers, aided and abetted *each other* in misdemeanor violations of § 924(a)(3)." 665 F.Supp.2d at 540 n.6 (emphasis added). This is precisely the situation in this case, where defendants are alleged to have aided and abetted each other, all of whom were employees of Blackwater, and not some outside individual in falsifying the ATF forms.[16]

---

[15] Although the opinion in Dedrick does not provide factual details of the charged conduct, the court refers the reader to an earlier order by the court that describes the facts of that case, which are summarized here. See 3:05-cr-240 (W.D.N.C), Document #83, Order at 6-8, 12-14.

[16] United States v. Wegg, 919 F.Supp. 898 (E.D.Va. 1996) and United States v. Percival, 727 F.Supp. 1015 (E.D.Va. 1990), involved factual circumstances very similar to Dedrick, where dealers sold firearms to individual members of the public, who would purchase firearms for another individual who was not eligible to purchase. At sentencing, the courts determined that only misdemeanor punishment could apply, even if, in the case of Wegg, defendants were charged with aiding and abetting violations by the straw purchasers, who themselves could be charged

27

In sum, because defendants are employees of a licensed firearms dealer who are alleged to have conspired with each other to falsify ATF Forms kept in the records of the licensed firearms dealer, defendants may be charged properly with violations of § 924(a)(3), instead of § 924(a)(1)(A). Pursuant to the government's suggestion in its brief, and the defendants' request at argument, the proper remedy at this stage is not to dismiss the charges but rather to correct the citation to specify a misdemeanor violation under § 924(a)(3), pursuant to Fed. R. Crim. P. 7(c)(2). Accordingly, defendants' motion to dismiss counts two through six is denied; however, the court grants defendant's alternative motion, under Fed. R. Crim. P. 7(c)(2) to correct the citation in these charges to specify a misdemeanor violation under § 924(a)(3).

### 3. Camden County Guns

Jackson and Mathews argue that counts eight and nine, which allege violations of § 922(o), must be dismissed because the exemption set forth in § 922(o)(2)(A) is void for vagueness as applied to defense contractors who provide military or law enforcement training to government entities, and more specifically as applied to them as defendants in this case. Jackson and Mathews further maintain that counts eleven and twelve, which charge violations of § 5861(d), must be dismissed because § 5861(d) must be interpreted consistent with § 922(o). As discussed below, the court finds these arguments to be premature.

Due process requires that a penal statute be sufficiently definite so as to apprise a person of ordinary intelligence of the conduct it proscribes. Kolender v. Lawson, 461 U.S. 352, 357 (1983).

---

with felonies. Wegg, 919 F.Supp. at 901, 903; see Percival, 727 F.Supp. at 1017. Although the government contends Percival is inapposite because it involved conviction under § 922(b), it nonetheless applied penalty provision in § 924(a) favorably to defendants here, recognizing that § 924(a)(3) applies "exclusively to licensed dealers who make false statements or representations in connection with a firearm sale." Percival, 727 F.Supp. at 1017. And, while the government points out Wegg did not express any opinion as to "whether a licensed dealer is involved in a straw purchase transaction in any capacity other than the seller of the firearm," Wegg did not purport to, or have occasion to, address application of the penalty provisions to circumstances as here where the employees of a dealer conspire together to fabricate ATF Forms.

Thus one may challenge a penal statute as unconstitutional based upon an assertion of vagueness. Smith v. Gorguen, 415 U.S. 566, 572-73 (1974). The standard a defendant must meet to establish a void for vagueness claim is a rigorous one. United States v. Passaro, 577 F.3d 207, 217 (4th Cir. 2009). A conviction will be void for vagueness only if "the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." United States v. Williams, 553 U.S. 285, 304 (2008).

Jackson and Mathews argue that § 922(o), as applied in counts eight and nine, is void for vagueness due to the ambiguity of the exception contained in § 922(o)(2)(A). § 922(o) provides, in relevant part, that

> (1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.
> (2) This subsection does not apply with respect to--
>> (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof[.]

Jackson and Mathews first argue that this law is void for vagueness as applied to any contractors who provide military or law enforcement training to government entities. Unless a vagueness challenge deals with First Amendment rights, however, the statute is judged as applied to "the particular facts at issue, for a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." Holder v. Humanitarian Law Project, — U.S. —, 130 S. Ct. 2705, 2718-19, (2010); see also Maynard v Cartwright, 486 U.S. 356, 361 (1988) (unless First Amendment interests are threatened, vagueness challenges will be "analyzed as applied to the specific facts of the case at hand"); United States v. Jaensch, 665 F.3d 83, 89 (4th Cir. 2011) (same). In the instant case, no First Amendment rights are implicated, nor do the facts involve the application of this statute to all contractors who provide

military or law enforcement training to government entities. Therefore the court does not consider whether this law is vague as applied to this subset of contractors generally.

Jackson and Mathews next argue that § 922(o) is void for vagueness as applied to them specifically. They assert that § 922(o)(2)(A) is unconstitutionally vague for failing to provide guidance as to what types of "authority" is required for possession of machine guns to be legal. They also maintain that the notion of possession "by or under the authority of" is unconstitutionally vague as the statute provides no guidance for when such possession occurs. Jackson and Mathews contend that they reasonably supposed they possessed the guns pursuant to authority vested by the Central Intelligence Agency (CIA) and the CCSD, because their contracts with the CIA demanded Blackwater deliver automatic weapons, and because the guns were registered to the CCSD but stored at the Blackwater facility and used by Blackwater pursuant to a written agreement between Blackwater and the CCSD.

The court finds this argument premature, where the only facts before the court for purposes of this motion to dismiss are the facts alleged in the indictment. The indictment does not allege that defendants received the thirty-four (34) machine guns at issue in these counts by virtue of authority from the CCSD and the CIA. Rather, the indictment alleges that purchase and transfer of firearms to Blackwater was part of a sham transaction engineered by Jackson, Mathews, and Deputy Worthington – in which Blackwater paid for the firearms and kept them at their facility – to obtain possession of the firearms. (See Indictment at 7-8, 12-13, 18-20). Jackson and Deputy Worthington allegedly signed a straw purchase agreement between the CCSD and Blackwater whereby Blackwater would purchase and possess the firearms under the pretense they were being purchased by the CCSD. (Id. at 12-13). Thus, the central question raised by the indictment is whether Jackson

and Mathews, as opposed to the CCSD, possessed the firearms, as charged in counts eight, nine, eleven and twelve. (Id. at 18-20).

Although Jackson and Mathews forecast in their brief that their defense to these charges will be that they reasonably believed that their alleged receipt or possession was "'authorized' by both CCSD and the federal government, (Mem. at 15), the record is as yet undeveloped on the contours of this defense. In this respect, this case is presently distinguishable from United States v. Vest, 448 F.Supp.2d 1002 (S.D. Ill. 2006), a case on which defendants rely primarily in their brief.[17]

In Vest, an Illinois State Trooper serving as equipment officer and lead rifle instructor of a state police Tactical Response Team, was indicted for violations of § 922(o) and § 5861(d) after he ordered a machine gun and had it registered to the Illinois State Police. Id. at 1004. The government claimed that the defendant "illegally utilized Illinois State Police letterhead to compose a letter to obtain the machine gun," that he lacked authority to purchase the firearm on behalf of the Illinois State Police, and therefore illegally possessed the weapon. Id. In moving to dismiss the indictment, the defendant argued that he did "receive the proper authority from a supervising officer to purchase the machine gun on behalf of the Illinois State Police," and that "by virtue of his former position as equipment officer and current position as lead rifle instructor, he had inherent authority to legally possess the weapon." Id. Thus, the defendant "chose[] to invoke the public authority defense," and claimed that he fell under the "law enforcement exception" in § 922(o)(2)(A), which, in turn, he claimed was unconstitutionally vague as applied to him because it was unclear what "authority"

---

[17] Neither the government nor defendants cite to any case in the Fourth Circuit examining whether § 922(o) is unconstitutionally vague. Apart from Vest, outside the Fourth Circuit, in United States v. Theunick, 651 F.3d 578 (6th Cir. 2011), the Sixth Circuit examined whether 26 U.S.C. §§ 5861(d), 5861(l), and 7206(2), were unconstitutionally vague, but did not directly address application of § 922(o). See 651 F.3d at 584, 585-86, & 587 ("§ 922(o) is not charged in this case, and the law enforcement defense in § 922(o)(2)(A) does not appear to extend to the statutes charged."). Although Theunick may inform the court's analysis by analogy into whether § 922(o) is unconstitutionally vague, the court will defer further analysis of Theunick until the record is more fully developed. For purposes of the present analysis, it suffices that the primary case relied upon by defendants does not support dismissal at this time.

31

would permit any law enforcement officer to possess a machine gun owned by the State Police. Id. at 1004, 1005-06.

The court held that § 922(o)(2)(A) was unconstitutionally vague as applied to the defendant in that case, in light of the authority defense raised. Id. at 1009-1011. In particular, the court reasoned that § 922(o) points to nothing that gives guidance as to what 'authority' is proper, thereby allowing a police officer's possession of a machine gun to be legal. Id. at 1009-10. In addition, the court determined that the statute is unconstitutionally vague because it allows for "arbitrary enforcement," because it enables prosecutors and agents to essentially define what type of possession is legal under the law enforcement exception. Id. at 1012-13.

Vest is distinguishable from this case in two fundamental ways, both of which ultimately point to the prematurity of defendants' argument. First, the defendant in Vest was a police officer, who claimed authority to possess the weapons by virtue of his office, whereas Jackson and Mathews were not government employees, much less police officers, at the time of the events at issue. Instead Jackson and Mathews emphasize Blackwater's status as a government contractor, and claim they had authority, or reasonably believed they had authority, to possess the firearms pursuant to agreements involving the CCSD and the CIA. (Mem. at 16, 17).

Jackson and Mathews do not, however, point to evidence of any agreements with the CIA giving them such authority. Although there is a "Memorandum of Agreement" between the CCSD and Blackwater noted in the indictment as "memorializing the straw purchase agreement which permitted Blackwater to purchase and possess" the firearms under the "pretense that the weapons were being purchased by the Sheriff's Office" (Indictment at 12-13), it is not clear whether this is the sole evidence of authority the defendants will seek to rely upon in their defense. (See Mem. at 15-17).

Second, as the government notes, <u>Vest</u> is distinguishable because the court in that case had a developed factual basis upon which to reach its conclusion that the statute was unconstitutionally vague as applied. In support of his motion to dismiss in <u>Vest</u>, the defendant filed an affidavit under oath stating that he ordered the machine gun "with the approval of" his supervisor. <u>United States v. Vest</u>, No. 3:06-CR-30011-DRH, DE # 68-1, Affidavit of James V. Vest at ¶4 (attached as Exhibit 1 to Opp.); <u>see</u> <u>Vest</u>, 448 F.Supp.2d at 1004 (citing to the Affidavit). The affidavit also included five documentary exhibits, and the court cited to other documentary exhibits outside of the indictment in its analysis. <u>Id.</u> Finally, the defendant in <u>Vest</u> had "invoke[d]" the public authority defense." <u>Id.</u>

Here, by contrast, the government argues that defendants "make numerous factual assertions, particularly in Part IV.B. of their memorandum [Mem. at 13-19], but they have not submitted any evidence to support their allegations," and they "have yet to identify any factual basis for why [the governmental authority exception] should be applied to their possession of the machine guns." (Opp. at 7). The court agrees for the most part with the government's position. Defendants have indeed not made a complete production of evidence to support their defenses at this time, and they have thus not identified in any substantial respect why the governmental authority exception should be applied to their possession of the machine guns.

Defendants further argue that the government's willingness to stipulate, in the course of discovery pleadings, that a government entity lawfully possessed and used the Camden County Guns, (<u>see, e.g.</u>, DE #136 at 4), is itself further evidence of the unconstitutional ambiguity of § 922(o). (Mem. at 15). Defendants maintain the only reasonable inference from this stipulation is that the government is prepared to admit that government agents legally possessed the guns by the authority of the CCSD. They note that it would be nonsensical to assert CCSD authority made the agents'

possession of the guns legal but not defendants', especially where defendants had a written agreement with the CCSD.

Defendants' premise is flawed, however. The government's proposed stipulation does not necessarily entail that agents possessed the guns pursuant to CCSD authority. Section 922(o)(2)(A) provides that § 922(o)'s prohibition does not apply to one who possesses a machine gun "by or under the authority of, the United States or any department or agency thereof." Thus another possible inference from the government's proposed stipulation is that the agents possessed the guns by the authority of an agency of the United States.[18]

Based on the foregoing, the court finds that resolution of the motion to dismiss counts eight and nine is premature. Accordingly, the court denies the motion to dismiss without prejudice. As their argument with respect to counts eleven and twelve is derivative of a finding of vagueness as to § 922(o) is void for vagueness, the court also denies the motion to dismiss counts eleven and twelve without prejudice.

### 4. Obstruction Charges

Howell and Bundy raise several arguments in favor of dismissal of counts fourteen and fifteen, including that the indictment fails to allege an essential element of the charges, and that the indictment fails to specify which "official proceeding" and "investigation or matter" they allegedly obstructed. Because, as set forth below, the court agrees that these defects warrant dismissal, the court need not address defendants' remaining arguments.

---

[18] The court recognizes that certain discovery disputes now pending relate to efforts by defendants to gather factual materials related to the governmental authority exception, and the court will address issues pertaining to that discovery by separate order, following the court's ongoing review of materials bearing upon the progress of discovery in this case.

### a. § 1515(c) as an essential element

Howell and Bundy argue that counts fourteen and fifteen must be dismissed because they do not allege an essential element of the charged conduct, particularly the inapplicability of 18 U.S.C. § 1515(c), which provides that the portions of the United States Code under which defendants are charged, do not "prohibit or punish the providing of lawful, bona fide, legal representation services in connection with or anticipation of an official proceeding." They argue that the inapplicability of § 1515(c) is an essential element for lawyers (or, in defendant Bundy's case, that it was an element for her where she was acting pursuant to defendant Howell's orders).

The government responds that § 1515(c) is best viewed as an affirmative defense, not an element. It appears that no court in this circuit has had opportunity to consider § 1515(c). Only the Eleventh Circuit has addressed this question, holding that § 1515(c) is an affirmative defense, not an element which the government must address in an indictment. United States v. Kloess, 251 F.3d 941, 948 (11th Cir. 2001). For the reasons that follow, the court concludes that the view espoused by the Eleventh Circuit and the government is not in accordance with principles stated in Fourth Circuit law, and thus the court finds counts fourteen and fifteen defective for failure to allege the inapplicability of § 1515(c).

An indictment "must include every essential element of an offense, or else the indictment is invalid; and mere reference to the applicable statute does not cure the defect." United States v. Kingrea, 573 F.3d 186, 191 (4th Cir. 2009) (citing United States v. Daniels, 973 F.2d 272, 274 (4th Cir. 1992)). "[I]t is the statement of facts in the pleading, rather than the statutory citation that is controlling." United States v. Hooker, 841 F.2d 1225, 1227 (4th Cir. 1988) (quotation omitted). Further, a missing element cannot be read into an indictment from another count unless it has been incorporated by reference. Id. at 1231.

Case 2:10-cr-00008-FL   Document 350   Filed 02/04/13   Page 35 of 43

Howell and Bundy are charged in count fourteen with violating 18 U.S.C. § 1512(b)(2)(B),

which provides that:

> [w]hoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to--
>
> . . .
>
> (2) cause or induce any person to--
>
> . . .
>
> (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;

. . .

shall be fined under this title or imprisoned not more than 20 years, or both.

Defendant Howell also is charged in count fifteen with violating 18 U.S.C. § 1519, which

provides that:

> [w]hoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

Section 1515(c) provides that "[t]his chapter does not prohibit or punish the providing of lawful,

bona fide, legal representation services in connection with or anticipation of an official proceeding."

In <u>Kloess</u>, the Eleventh Circuit recognized that "[u]nfortunately, Section 1515(c) does not

specify whether the exception it creates is an element of the offense or an affirmative defense." 251

F.3d at 945. Based on its analysis of the statute, however, the Eleventh Circuit concluded § 1515(c)

was an affirmative defense. <u>See</u> <u>id.</u> 945-48. Central to its analysis was the premise that an

affirmative defense includes "[a]ny defense which tends to negate an element of the crime charged,"

which when "sufficiently raised by the defendant, must be disproved by the government." <u>Id.</u> at 947.

This definition of an "affirmative defense," and the requirement that it must be raised by the

defendant, is consistent with the approach of previous Eleventh Circuit cases. <u>See e.g.,</u> <u>United States</u>

36

v. Steele, 147 F.3d 1316, 1320 (11th Cir. 1998) (holding that professional practice exception in 21 U.S.C. § 822 is an affirmative defense to a controlled substance conviction under § 841).

The Fourth Circuit, by contrast, has a narrower definition of affirmative defenses. Under Fourth Circuit law, "an affirmative defense does not negate an element of a crime; it excuses punishment for a crime the elements of which have been established and admitted." United States v. Thompson, 554 F.3d 450, 452 n.2 (4th Cir. 2009) (internal quotations omitted). By contrast, an essential element of an offense is one "whose specification is necessary to establish the very illegality of the behavior[.]" United States v. Hooker, 841 F.2d 1225, 1232 (4th Cir. 1988).

The Fourth Circuit's treatment of analogous statutory exceptions, in light of these definitions, provides guidance to this court in how to treat the § 1515(c) exception in this case. For example, 21 U.S.C. § 841 prohibits any person from "knowingly or intentionally . . . distribut[ing], or dispens[ing], or possess[ing] with intent to . . . distribute, or dispense a controlled substance." However, under 21 U.S.C. § 822(b) doctors who are registered by the Attorney General may prescribe and dispense controlled substances as far as they are authorized by their registration.

Accordingly, the Fourth Circuit has held that in order to charge a doctor for a violation of § 841, an indictment must allege the following three "elements": "(1) a knowing or intentional attempt to distribute or dispense, (2) a substance known to be controlled (3) *in a way not authorized by this subchapter.*" United States v. Daniel, 3 F.3d 775, 778 (4th Cir. 1993) (emphasis added). Thus, an indictment must allege that "the attempted distributions or dispensations *were 'not for a legitimate medical purpose.'*" Id. (emphasis added); see also United States v. Singh, 54 F.3d 1182, 1187 (4th Cir. 1995) (a conviction of a doctor under § 841 requires "the following three elements": (1) that the defendant "distributed or dispensed a controlled substance," (2) that the defendant "acted knowingly and intentionally," and (3) that the defendant's "actions were not for legitimate medical purposes in

the usual course of his professional medical practice or were beyond the bounds of medical practice.").

Notably, in recognizing these three "elements" under § 841, the Fourth Circuit expressly noted that, by contrast, "[o]ther circuits have concluded that whether the defendant's actions were for legitimate medical purposes or were beyond the bounds of medical practice is not an essential element of a § 841 charge against a doctor." United States v. Hurwitz, 459 F.3d 463, 475 n.7 (4th Cir. 2006). For example, as noted by Hurwitz, the Eleventh Circuit is one such circuit that does not treat this "legitimate medical purposes" exception as an element. Rather, as noted above, the Eleventh Circuit treats it as an "affirmative defense" that need not be charged in the indictment. See Steele, 147 F.3d at 1318. Thus, the Fourth Circuit is directly in conflict with Eleventh Circuit law on its treatment of an analogous exception in a criminal statute, and this court is obligated to follow the approach of the Fourth Circuit, rather than the Eleventh Circuit as set forth in Kloess.

Following the Fourth Circuit approach to the statutory exception in § 1515(c), the court holds that where an attorney or one under his direction is charged with an obstruction offense under § 1512(b)(2)(B) or § 1519, the government must expressly allege as an element of the offense in the indictment that the defendant in engaging in the conduct alleged was not "providing lawful, bona fide, legal representation services in connection with or anticipation of an official proceeding." § 1515(c).

The government, citing Kloess, argues that viewing § 1515(c) as an element would lead to the absurd result of the government having to:

> negate that the defendant was providing bona fide legal services wherever it charges a defendant with assaulting a process server under 18 U.S.C. § 1051, threatening a juror by force under 18 U.S.C. § 1512(b)(3), injuring a juror in retaliation for a verdict under 18 U.S.C. § 1503, stealing court records under 18 U.S.C. § 1506, and witness tampering by murder under 18 U.S.C. 1512(a).

251 F.3d at 946. However, as defendant Howell noted in his reply, only attorneys are persons authorized to provide "legal representation services." Therefore the government need only plead the inapplicability of § 1515(c) in cases such as that here involving the alleged actions attorneys, or those acting under their control. Here, the indictment alleges that Howell was an attorney with Blackwater who held the title of General Counsel. In describing the obstructive conduct for purposes of counts fourteen and fifteen, the indictment describes conduct allegedly taken by Howell in his corporate role as general counsel, and by Bundy at Howell's direction. (Indictment at 1, 10, 15, 21-22). Moreover, the email, which is central to and referenced in count fifteen, and which is now in the record (DE # 325), is signed by Howell as General Counsel. Accordingly, the concerns voiced by the government regarding when it must or should plead § 1515(c) as an element in the indictment are unfounded here, and would likewise be unfounded in any case in which a defendant is an attorney, or individual acting at their direction, who is alleged to have obstructed justice.

In sum, counts fourteen and fifteen must be dismissed because they fail to plead an essential element of the offenses.

### b. Indictment fails to specify "official proceeding" and "investigation"

In addition, the court finds that the indictment is fatally defective for failing to allege which "official proceeding" and "investigation" Howell and Bundy allegedly obstructed. To properly charge an offense, an indictment "must contain a statement of the essential facts constituting the offense charged." United States v. Smith, 44 F.3d 1259, 1264 (4th Cir. 1995). (quotations omitted). An indictment not only must contain "the elements of the offense intended to be charged," but it must also "sufficiently [apprise] the defendant of what he must be prepared to meet." Russell v. United States, 369 U.S. 749, 763 (1962). "[T]he language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and

39

circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." Id. at 765 (quotations omitted). While "[a]n indictment is generally sufficient if it alleges an offense in the words of the statute," United States v. Wicks, 187 F.3d 426, 427 (4th Cir.1999), "[i]t is an elementary principle of criminal pleading, that where the definition of an offence . . . includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,-it must descend to particulars." United States v. Cruikshank, 92 U.S. 542, 558 (1875).

Counts fourteen and fifteen do not include any reference to what proceeding defendants allegedly obstructed, or what investigation defendant Howell allegedly obstructed. Count fourteen merely alleges that Howell and Bundy obstructed "an official proceeding." Indictment 21. Count fifteen alleges that Howell obstructed an "investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States." Id. at 22. The parties dispute whether the court must look to other allegations in the indictment, outside of counts fourteen and fifteen, to inform upon the nature of proceedings or investigations allegedly obstructed by Howell and Bundy as referenced in counts fourteen and fifteen.[19] The court, however, need not resolve this dispute because, even considering the allegations in the indictment as a whole, the government has failed to sufficiently apprise Howell and Bundy of the investigation and official proceeding they are alleged to have obstructed.

The government argues that when looking at the whole of the indictment, the official proceeding and investigation become clear and defendants cannot claim confusion. The government

---

[19] Cf. Hooker, 841 F.2d at 1230-31 (rejecting argument that "the court can look to the indictment as a whole to determine the sufficiency of a charge that, standing alone, may be insufficient" and holding that a missing element cannot be read into an indictment from another count unless it has been incorporated by reference); United States v. Bivins, 104 F. App'x 892, 896 (4th Cir. 2004) (noting "the indictment is considered 'as a whole,'" when analyzing argument that the indictment failed to adequately describe the alleged illegal conduct) (quoting United States v. Am. Waste Fibers Co., Inc., 809 F.2d 1044, 1046 (4th Cir. 1987)).

40

points to portions of the indictment including the following excerpts with particular reference to those allegations noted in bold below:

### Manner and Means

5.    When the SBRs began reappearing in the United States, at which point the defendants were well aware of **the federal investigation which led to these charges,** the defendants order the rifles converted back to long barrels and moved to a different storage facility for the purpose of hinder the investigation. . . .

6.    The effort to obstruct **the on-going investigation** was initiated with an order directing that the SBRs be both moved and altered. After this directive was issued and was carried out, the defendants attempted to shield themselves from their conduct by sending an email with a proposed letter to the new President of Blackwater/Xe. . . .

### Overt Acts

In furtherance of the conspiracy and in order to effect the object thereof, the defendants did commit, among others, the following overt acts: . . . .

### Obstruction of Justice

2.    On or about March 26, 2009, at the direction of defendants ANDREW HOWELL and ANA BUNDY, and with the objective of avoiding detection in **an expected ATF inspection**, approximately 14 short-barreled rifles owned by Blackwater/Xe were moved from one armory located at the Moyock facility to a different armory at that facility

3.    On or about March 26, 2009, at the Moyock facility and at the direction of defendants ANDREW HOWELL and ANA BUNDY with the objective of frustrating **a federal investigation**, approximately 14 unregistered short-barrel M4s were converted to long-barrels.

(Indictment at 9-10, 15).

These allegations, however, are insufficient to apprise Howell and Bundy of the particular investigation and proceeding they are alleged to have obstructed. As defendants note, "federal investigation" referenced here could be any federal court, congressional, agency, or insurance proceeding in which Blackwater was involved, and which may have been ongoing during 2009. Similarly "an expected ATF inspection" does not specify when this inspection was expected, or

41

whether for example it was part of another ongoing investigation, or audit, or other proceeding involving Blackwater.

Comparison to the indictment in Russell, for example, is informative. There, defendants were convicted of refusing to answer questions before a Congressional inquiry, in violation of 2 U.S.C. § 192. 369 U.S. at 751-52. In upholding the convictions, the Supreme Court held that indictments which "set out not only the times and places of the hearings at which the petitioners refused to testify, but also specified the precise questions which they then and there refused to answer," sufficiently apprised defendants of the nature of the proceeding. Id. at 764. Although Russell involved a Congressional inquiry, and this case involves alleged ATF inspection and other "federal investigation," the contrast between this case and Russell is notable.

Here, Howell and Bundy are provided no details as to the times and places of the inspection and investigation, and the nature of the matters under inquiry. While the indictment states that the investigation is one which "led to these charges," (Indictment at 9), it is unclear whether this refers to count one of the indictment (which is the conspiracy charge comprising overt acts unrelated to short barrel rifles) or whether this refers to counts fourteen and fifteen of the indictment (which are the obstruction charges, related to short barrel rifles).

In sum, because counts fourteen and fifteen of the indictment do not sufficiently "contain[] the elements of the offense intended to be charged, and sufficiently apprise[] the defendant of what he must be prepared to meet," Russell, 369 U.S. at 763, these counts must be dismissed. There is no indication that these deficiencies stem from any sort of prosecutorial misconduct. The government may seek to correct error made. See United States v. Feurtado, 191 F.3d 420, 424-25 (4th Cir. 1999); United States v. Stevens, 771 F.Supp.2d 556, 568 (D. Md. 2011).

42

## CONCLUSION

Based on the foregoing, motion to dismiss count one is GRANTED IN PART and DENIED IN PART, where count one is dismissed against Howell and Bundy, but remains against Jackson, Mathews, and Slezak. Motion to dismiss counts two through six is DENIED; however alternative motion to correct the citations in the indictment, pursuant to Fed. R. Crim. P. 7(c)(2), so that all references to § 924(a)(1)(A) instead refer to § 924(a)(3), is GRANTED, where the charges are misdemeanor ones. Motion to dismiss counts eight, nine, eleven, and twelve is DENIED. Motion to dismiss counts fourteen and fifteen is GRANTED. Rule 17.1 status conference is set in the case for February 21, 2013, at 1:30 p.m., at Raleigh, North Carolina.

SO ORDERED, this the $4^+$ day of February, 2013.

LOUISE W. FLANAGAN
United States District Judge